Hawkins, J.,
delivered the opinion of the Court.-
The hill in this case was filed in the Chancery Court at Cleveland, on the 29th day of March, 1864. At the February Term, 1865, of said Court,, and when the cause was not at issue, the Chancellor, upon his own motion, pronounced a decree in the cause, dismissing the bill, as we infer, under what we believe to have been a mistaken apprehension of the effect of the fifth section of the Schedule to the amendments of the Constitution of Tennessee, adopted by the people on the 22d day of February, 1865. That section provides, that “all laws, ordinances and resolutions, as well as all acts done in pursuance thereof, under the authority of the usurped State Government, after the declared Independence of the State of Tennessee, on *174 or after the 6th day of May, 1861, were unconstitutional, null and void from the beginning.”
If complainant’s right to file the bill, or the right of the Court to entertain or to exercise jurisdiction over the cause, depended upon some such law, ordinance or resolution so declared unconstitutional, null and void from the beginning, or the bill sought to enforce some supposed right accruing to complainant under the same, or by virtue of some act done in pursuance thereof, it is clear that it would have been the duty of the Chancellor, in the exercise of his ordinary powers as such, upon the questions coming regularly before him for his adjudication, to have dismissed the bill. But the cause was not at issue— no such facts appear in the record, nor have the Courts judicial knowledge of the fact, that such existed in this cause. While on the other hand, under and by virtue of the laws of Tennessee, as they existed prior to the 6th day. of May, 1861, the complainant had a right to file his bill, the Court not only had the power, but it was its duty, to entertain and exercise full and complete jurisdiction over the cause; and in so far as the record shows, the complainant was entitled to the relief sought by his bill.
Courts were holden in Tennessee, at times prescribed by laws passed “under the authority of the usurped State Grovernment,” after the 6th day of May, 1861; and in view of this fact, and for the purpose of preserving the judicial tribunals of the country, and sustaining their adjudications, as a matter of justice and public policy, the section of the Schedule before re *175 ferred to, instead of declaring tbe judgments and decrees of such Courts void, further provides, “that this section shall not be construed as to affect any judicial decisions made by the State Courts, held at times differing from those provided by law, prior to May 6th, 1861,; said judicial decisions being made pursuant to the laws of the State of Tennessee, enacted previous to said date, and between parties in Court and litigating their rights.”' The substance and meaning of this provision, is, that notwithstanding the provision before alluded to, declaring all laws and acts done in pursuance thereof, under the usurped State Government, since the 6th of May, 1861, “were unconstitutional, null and void from the beginning;” yet, if State Courts have been held under laws thereby declared void, “at times differing from those provided by law, prior to that time, the judgments and decrees thereof shall be held and deemed valid, provided they have been made, in pursuance of laws existing prior to that time, and the parties were present in Court, etc.” No reference whatever is made to the. judgments or decisions of Courts, holden in pursuance of laws existing prior to that time; and it certainly will not be insisted, that the Convention intended to give effect to the judgments of Courts holden under laws passed since the 6th of May, 1861, and declare void all judgments or decisions of Courts holden under laws existing prior to that time. The only reasonable construction, as we think, which can be given to this section, is, that notwithstanding the former provision, judgments and decrees of State Courts, holden since *176 tbe 6th day of May, 1861, and at times provided by laws enacted prior to that date, are valid; . but the judgments and decrees of Courts holden since that date, and at times differing from those prescribed by laws existing before that time, are valid,, in so far only as they are made so by the latter portion of that section. That Courts were open since the 6th day of May, 1861, and the judgments and decrees of such, were, by the framers of the Schedule, deemed legal and valid, is also clearly apparent from one of the provisions of the fourth section of the Schedule, which is as follows: “Nor shall any writ of error be refused or abated in any cause or suit decided since the 6th of May, 1861, and prior to this time, (such time hereafter as the Legislature may prescribe,) by'reason of any lapse of time.” One of the provisions of the first section of An Ac.t of the Legislature of Tennessee, passed on the 30th of May, 1865, is as follows: “Nor shall any writ of error be refused or barred, in any suit decided since the 6th day of May, 1861, etc.;” which is clearly a Recognition, by the legislative authority of the State, of the fact, not only that Courts were open since the 6th of May, 1861, but that their judgments and decrees were valid, notwithstanding the powers of the State Government may, at the time, have been in the hands of those who had usurped its authority. We are, therefore, of the opinion, the decree of the Chancellor is erroneous. Surely, no authority for dismissing the bill, can be found in the amendments of the Constitution, or Schedule thereto, and we can find none elsewhere.
*177 Instead of being intended to overthrow the judiciary of the country, and unsettle their adjudications for years, they were designed to give strength and efficiency to this great right arm of Justice, to which all, however high or low, may appeal, with equal confidence. They were designed to build up law and promote good order; to restore the State Government to its ancient moorings; to allay the storm of agitation, and to give confidence, peace and tranquility to the public mind, by a restoration of civil government, and throwing wide open all the avenues which lead to the temple of Justice, where all might demand and receive according to their merits, without sale, denial or delay; and it is the duty of the Courts of the country to construe them with reference to the objects for which they were designed.
The decree of the Chancellor will be reversed, and the cause remanded.